UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL SMITH and DEBORAH SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | 17 C 8328 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NVR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

In this suit against NVR, Inc. on behalf of themselves and a putative class of fellow home buyers in the Tall Pines development in Plainfield, Illinois, Paul and Deborah Smith allege that their home (1) does not conform to the building plans NVR advertised to them and submitted for approval to the Village of Plainfield and (2) does not comply with the Village's building code. Doc. 1. NVR moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint. Doc. 12. The motion is granted in part and denied in part, though the Smiths will be given a chance to replead.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the Smiths' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir.

1

2013). The facts are set forth as favorably to the Smiths as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

On April 28, 2016, the Smiths agreed to purchase a home in the Tall Pines development in Plainfield, which consists of 46 homes built by NVR. Doc. 1 at ¶ 8; Doc. 1-1. The Purchase Agreement between the Smiths and NVR states in pertinent part:

> [T]he Home may be different than what You have seen in our advertisements and marketing information. The Home will be constructed as shown on the construction drawings (or blueprints), the grading plan, floor plans and other plans related to the construction of the Home … together with the options You selected on the Master Selection sheet … and any Change Orders we mutually agree to … . All of these together are called the "Plans and Specifications."

Doc. 1-1 at 1. The Agreement further provides that NVR "ha[s] the right to substitute similar materials of substantially equivalent quality" and "reserve[s] the right to make changes in the Plans and Specifications for purposes of mechanical installations, building code and site requirements, and reasonable architectural design improvements subsequent to the date of this Agreement." *Id*. at 4. The Agreement also waives Illinois's implied warranty of habitability. *Id*. at 2-3. In November 2016, the Village of Plainfield issued a "Certificate of Occupancy and Compliance" for the Smiths' home, granting a "right to occupancy as a Duplex Permit" and stating that the home "does comply with the provisions of the Zoning Ordinance of the Village of Plainfield." Doc. 16-2 at 2; Doc. 23 at 10.

The complaint alleges that the home has several "material construction defects." Doc. 1 at ¶ 9. First, NVR installed an HVAC system with a 2.5-ton (or smaller) compressor even though the Village's building code requires at least a 3-ton compressor. *Id*. at ¶ 12. Likewise, NVR installed a "region 1 sized furnace[]" even though the building code requires a "region 5

sized furnace." *Ibid*. Second, the home's floor joists are not spaced properly, leading to inadequate floor support in violation of the building code. *Id*. at ¶ 13. Third, the water supply lines have too narrow a diameter as compared to the supply lines represented on the Plans and Specifications, and also do not comply with the building code. *Id*. at ¶ 16. Fourth, NVR used 25-year shingles in constructing the home, not the 30-year shingles it advertised. *Id*. at ¶ 14. Finally, contrary to NVR's representations, the home's cabinets are made not of natural wood, but instead of an "artificial non-wood material" with a wood veneer. *Id*. at ¶ 15.

## Discussion

The complaint has two counts, both under Illinois law. Count I alleges that NVR violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, *id.* at ¶¶ 25-29, while Count II alleges that NVR breached the Purchase Agreement, *id*. at ¶¶ 30-33.

### I. ICFA Claim

For their ICFA claim, the Smiths allege that NVR deceived them by "misrepresenting the actual finished product" given that their home was not "code compliant or built to specifications." *Id*. at ¶ 28. The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). "To state a claim under the ICFA … [the Smiths] must plausibly allege: (1) a deceptive act or promise by [NVR]; (2) [NVR's] intent that [they] rely on the deceptive act; (3) the deceptive act occurred during a course of conduct involving trade or commerce; and (4) actual damage as a result of the deceptive act." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). The ICFA prohibits both "unfair" and "deceptive" acts or practices. 815 ILCS 505/2. Allegations of unfair acts under the ICFA are

subject to Rule 8(a)'s general pleading standard, *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011), while allegations of deceptive acts "sound[] in fraud" and therefore are subject to Rule 9(b)'s heightened pleading standard, *see Haywood*, 887 F.3d at 333. Because the Smiths allege only deceptive acts, Doc. 1 at ¶¶ 26 ("Defendant deceived new home purchasers."), 27 ("Defendants' [sic] acts and omissions create a likelihood of deception and have the capacity to deceive home purchasers."), 29 ("Plaintiff[s] and the Class were damaged by Defendant's deceptive practices … ."), their ICFA claim must satisfy Rule 9(b). *See Haywood*, 887 F.3d at 333 ("Although Haywood brings one ICFA claim alleging unfair practices, that claim still sounds in fraud because it relies upon the same baseline allegation that Massage Envy intentionally misled consumers by hiding information on the length of massage time."); *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 464 (7th Cir. 2014) (holding that because "[w]hat is deceptive is also unfair," a plaintiff who alleges only deceptive unfairness has not preserved a non-deceptive unfairness claim under the ICFA).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "That means that [the complaint] must specifically allege the 'who, what, when, where, and how of the fraud.'" *Haywood*, 887 F.3d at 333 (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)). "A principal purpose of requiring that fraud be pleaded with particularity is, by establishing this rather slight obstacle to loose charges of fraud, to protect individuals and businesses from privileged libel (privileged because it is contained in a pleading)." *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir. 2003). Accordingly, Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure

4

that the charge of fraud is responsible and supported." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013) (internal quotation marks omitted).

The Smiths allege that NVR, "prior to its sales of the homes in Tall Pines, represented to [them] that the home[] would be constructed as shown on the construction drawings." Doc. 1 at ¶ 19. That allegation does not satisfy Rule 9(b) because it does not indicate "the identity of the person making the misrepresentation, the time [or] place … of the misrepresentation, and the method by which the misrepresentation was communicated to [the Smiths]." *Camasta*, 761 F.3d at 737; *see also Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) ("For each of his allegations, Rocha fails to provide the specific names, dates [or] times … of the misrepresentations or omissions that give rise to the alleged fraud."). The same applies to the Smith's allegations that NVR "deceived" them and that "[its] acts and omissions create a likelihood of deception and have the capacity to deceive new home purchasers." Doc. 1 at ¶¶ 26-27. True, Rule 9(b) does not demand total recall. *See Camasta*, 761 F.3d at 737 ("We do not require that [the plaintiff] provide the *precise* date, time, and location that he saw the advertisement or every word that was included on it … .") (emphasis added). But, given that the Smiths presumably know with whom they communicated, when, and by what means, the Rule requires the Smiths to do more than simply assert that a misrepresentation about their home's fixtures was made by some unnamed person at some unknown point via some unspecified means. *See ibid.* ("[S]omething more than [the plaintiff's] assertion that 'merchandise was offered at sale prices' is needed."); *Pirelli*, 631 F.3d at 445 ("Pirelli's *de minimis* showing tells us little and does not fulfill Rule 9(b)'s purpose of forcing the plaintiff to do more than the usual investigation before filing his complaint.") (brackets and internal quotation marks omitted); *Landlock Natural Paving, Inc. v. Desin L.P.*,

5

2013 WL 4854361, at *4-5 (N.D. Ill. Sept. 11, 2013) (dismissing similarly "conclusory allegations" for failure to satisfy Rule 9(b)) (internal quotation marks omitted).

The Smiths' ICFA claim accordingly is dismissed.

## II.     Breach of Contract Claim

For their contract claim, the Smiths allege that NVR breached the Purchase Agreement because their home did not conform to the specifications that NVR submitted to the Village for approval and did not comply with the building code. Doc. 1 at ¶ 32. "Under Illinois law, a breach of contract claim has four elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) a breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Bresney*, 784 F.3d 1154, 1158-59 (7th Cir. 2015) (internal quotation marks omitted); *see also Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946, 949 (7th Cir. 2016) ("To prevail on a breach-of-contract claim in Illinois … the plaintiffs must show that there was a contract between the parties, and that [the defendant] breached the contract by failing to adhere to its terms."). "'A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent.'" *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club*, LLC, 870 F.3d 682, 690 (7th Cir. 2017) (quoting *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)); *see also Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 267 (7th Cir. 2016) ("[T]he goal of contract interpretation is to ascertain the parties' intent and, in doing so, [courts] first look to the plain and ordinary meaning of the contract language.") (internal quotation marks omitted). "[I]f the language of the contract is susceptible to more than one meaning, it is ambiguous. If the contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent." *Right Field Rooftops*, 870 F.3d at 690 (citing *Gallagher*, 874 N.E.2d at 58).

As to the HVAC, furnace, floor joists, and water supply lines, the Smiths allege that their home was "not built to the applicable building codes" and "not constructed to the specifications of the building plans submitted to the Village of Plainfield for approval." Doc. 1 at ¶¶ 10-11, 32; *see also id*. at ¶¶ 12-13 (HVAC, furnace, and joists), 16 (supply lines). As noted, however, the Purchase Agreement provides that NVR "reserve[s] the right to make changes in the Plans and Specifications for purposes of mechanical installations, building code and site requirements, and reasonable architectural design improvements subsequent to the date of this Agreement." Doc 1-1 at 4. Moreover, the Smiths concede that their home passed the Village's building inspection in November 2016 and that they received an occupancy permit stating that the property "does comply with the provisions of the Zoning Ordinance of the Village of Plainfield." Doc. 23 at 10; Doc. 16-2.

Taken together, and without some explanation or elaboration in the complaint, the Purchase Agreement and occupancy permit render implausible the Smiths' claim that NVR breached the Agreement by installing the HVAC and furnace systems, floor joists, and supply lines in a manner that violated the building code and failed to comply with the specifications submitted to the Village. The Agreement plainly enables NVR to make changes to the Plans and Specifications; it does not require the home to match exactly NVR's submissions to the Village. Thus, while it is conceivable that the home differed in certain respects from the Plans and Specifications, including those that NVR submitted to the Village, the Smiths have not plausibly alleged that NVR broke any promises to the Smiths as a result. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) (Indiana law) (dismissing a breach of contract claim given the plaintiff's failure to identify "promises that [the defendant] … may have made to him that might have formed the basis of a contract"); *Cushman & Wakefield, Inc. v. Ill. Nat'l Ins. Co.*,

2015 WL 2259647, at *8 (N.D. Ill. May 11, 2015) (Illinois law) (dismissing a breach of contract claim where the "court's own examination of [the contract] did not reveal" a provision that the defendant had violated).

Moreover, the Smiths concede the Village issued an occupancy permit for their home after inspecting the premises. Doc. 23 at 10; Doc. 16-2. That concession dooms their claim that NVR breached the Agreement by providing a home that did not comply with the building code, as the complaint does not allege that the Village's inspection was deficient, that any code violations were concealed or otherwise not discovered due to fraud, deception, collusion, or some other means, or that the inspection would not have revealed the kinds of code violations described in the complaint. Doc. 23 at 10. Absent such allegations and assuming (favorably to the Smiths) that the Agreement required compliance with the building code, it is implausible on the current complaint for the Smiths to allege that their home does not comply with the code. *See Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 600 (7th Cir. 2014) (affirming the dismissal of a contract claim for failure to satisfy the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As to the shingles and cabinetry, the Smiths allege that NVR breached the Agreement by using 25-year shingles and wood veneer cabinets instead of, as promised, 30-year shingles and natural wood cabinets. Doc. 1 at ¶¶ 14-15. As noted, the Agreement provides that NVR "ha[s] the right to substitute similar materials of substantially equivalent quality." Doc. 1-1 at 4. The Agreement, however, does not define the terms "similar materials" and "substantially equivalent quality." Absent such a definition, and because what is "similar" or "substantially equivalent" in one context may not be in another, those contractual terms are ambiguous. *See Windridge of Naperville Condo. Ass'n v. Phila. Indem. Ins. Co.*, 2018 WL 1784140, at *4 (N.D. Ill. Apr. 13,

2018) (Illinois law) (holding that the contractual term "comparable material and quality" was, at best, ambiguous); *Nat'l Presbyterian Church, Inc. v. GuideOne Mut. Ins. Co.*, 82 F. Supp. 3d 55, 59 (D.D.C. 2015) (D.C. law) (same for the contractual term "other property of like kind and quality"); *Trout Brook S. Condo. Ass'n v. Harleysville Worcester Ins. Co.*, 995 F. Supp. 2d 1035, 1044 (D. Minn. 2014) (Minnesota law) (holding that "[t]he terms 'similar materials' and 'material of like kind and quality' simply cannot be defined, as a matter of law"); *Appel v. Liberty Am. Ins. Co.*, 2008 WL 11333591, at *6 (S.D. Fla. Nov. 25, 2008) (Florida law) (holding that the contractual term "amount needed to replace or repair damaged property with materials of similar kind and quality" was ambiguous); *Amerisure Ins. Co. v. Roll Serv., Inc.*, 2002 WL 31101269, at *5 (N.D. Ill. Sept. 19, 2002) (Illinois law) ("'Similar quality' is an ambiguous term because it is susceptible to more than one reasonable meaning. For example, 'similar quality' could mean (1) the same make and model as the original or (2) the same make and model as the original as well as non-defective.").

It accordingly is plausible at this stage that 25-year shingles and wood veneer cabinets are not "similar materials of substantially equivalent quality" to the 30-year shingles and natural wood cabinets that NVR allegedly promised in the Agreement. And because determining the meaning of such open-textured contractual language requires factual context that only extrinsic evidence can provide, the Smiths' breach of contract claim survives dismissal as it pertains to the shingles and cabinets. *See NanoeXa Corp. v. Univ. of Chi.*, 2011 WL 1399264, at *4 (N.D. Ill. Apr. 13, 2011) (Illinois law) ("Because the agreement is ambiguous with respect to the scope of the rights granted to the [the plaintiff], the declaratory judgment claim survives dismissal under Rule 12(b)(6). Proper interpretation of the agreement will require extrinsic evidence, which the

parties may adduce in discovery and present at summary judgment and, if the case survives, at trial.") (citing cases).

## Conclusion

NVR's motion to dismiss is granted in part and denied in part. The Smiths may proceed with their claim that NVR's use of 25-year shingles and wood veneer cabinets breached the Purchase Agreement. The complaint otherwise is dismissed, though the dismissal is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). The Smiths have until June 27, 2018 to file an amended complaint; if they fail to do so, the dismissal of those claims will convert automatically to a dismissal with prejudice.

June 6, 2018

United States District Judge