UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL SMITH and DEBORAH SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | 17 C 8328 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| NVR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

In this diversity suit against NVR, Inc. on behalf of themselves and a putative class of fellow homebuyers in the Tall Pines development in the Village of Plainfield, Illinois, Paul and Deborah Smith alleged that their home did not conform to the features list and building plans that NVR advertised to them and submitted to the Village. Doc. 1. On NVR's motion under Civil Rule 12(b)(6), the court dismissed without prejudice the Smiths' claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), and much of their breach of contract claim. Docs. 44-45 (reported at 2018 WL 2718038 (N.D. Ill. June 6, 2018)). The Smiths filed an amended complaint, Doc. 46, which NVR moves to dismiss under Rule 12(b)(6), Doc. 57. The motion is granted in part and denied in part.

### Background

In resolving a Rule 12(b)(6) motion, the court must accept the operative complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the Smiths' favor, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial

1

notice," along with additional facts set forth in the Smiths' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to the Smiths as those materials permit. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 479 (7th Cir. 2017). In setting forth the facts at this stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

On April 28, 2016, the Smiths agreed to purchase from NVR a home in the Tall Pines development. Doc. 46 at ¶ 8; Doc. 58-1 at 2. The Purchase Agreement states in pertinent part:

> [T]he Home may be different than what You have seen in our advertisements and marketing information. The Home will be constructed as shown on the construction drawings (or blueprints), the grading plan, floor plans and other plans related to the construction of the Home … together with the options You selected on the Master Selection sheet … and any Change Orders we mutually agree to … . All of these together are called the "Plans and Specifications."

Doc. 58-1 at 2. The Agreement further provides that NVR "ha[s] the right to substitute similar materials of substantially equivalent quality" and "reserve[s] the right to make changes in the Plans and Specifications for purposes of mechanical installations, building code and site requirements, and reasonable architectural design improvements subsequent to the date of this Agreement." *Id*. at 5. In November 2016, the Village of Plainfield issued a "Certificate of Occupancy and Compliance" for the home, granting a "right to occupancy as a Duplex Permit" and stating that the home "does comply with the provisions of the Zoning Ordinance of the Village." Doc. 58-2; Doc. 46 at ¶¶ 17-18.

Before purchasing the home, the Smiths visited an NVR sales center, where they met with sales representatives Tammy Quinn and "Renee." Doc. 46 at ¶¶ 9-10. Quinn provided the Smiths with advertising and sales materials, including a brochure titled "Tall Pines at Grande Park Included Features." *Id*. at ¶ 11; Doc. 30-1. The brochure indicated that the home would

2

have TAMKO 30-year architectural, self-sealing shingles and TIMBERLAKE wooden cabinets in the kitchen and bathroom. Doc. 46 at ¶ 12; Doc. 30-1 at 2. The Smiths relied on those representations when deciding to purchase, but later discovered that NVR had instead installed 25-year shingles and cabinets with an artificial non-wood wrap. Doc. 46 at ¶¶ 13-14. While the actual shingles and cabinets are substantially inferior in quality than what was promised, they are indistinguishable in appearance. *Ibid*.; Doc. 62 at 9-10.

The home as constructed also includes materials that are substantially inferior to the materials that the Village approved based on construction plans that NVR submitted during the permitting process. Doc. 46 at ¶¶ 17-18. NVR installed a Goodman Manufacturing Condenser model #GSX13031BE, a 2.5-ton unit rated at 30,000 British Thermal Units ("BTU"), rather than the Goodman Manufacturing Condenser model #GSX130361E, a 3-ton unit rated at 36,000 BTU, that the Village had approved. *Id*. at ¶¶ 21-22. Likewise, NVR installed a Goodman Manufacturing Furnace model #GMSS920603BNAA, rated at 60,000 BTU, rather than the Goodman Manufacturing Furnace model #GMSS920804CN, rated at 80,000 BTU, that the Village had approved. *Id*. at ¶¶ 19-20. In addition, the home's heating, ventilation, and air conditioning ("HVAC") system includes duct work inferior to what the Village had approved. *Id*. at ¶ 23. Moreover, although NVR's plans indicated that the home's joists would be supported by web stiffeners, no web stiffeners were installed. *Id*. at ¶ 26. Finally, the home's water supply lines have a narrower diameter than indicated in the plumbing fixture calculations approved by the Village. *Id*. at ¶ 24.

Village inspectors did not discover these discrepancies because, while significant in terms of quality, they were inconspicuous in appearance and thus not readily detectable during inspection. *Id*. at ¶¶ 18, 23, 25, 27; Doc. 62 at 9-10.

**Discussion**

Like the original complaint, the amended complaint brings ICFA and breach of contract claims under Illinois law.

**I. ICFA Claim**

The ICFA claim alleges that NVR deceived the Smiths by providing them a home inferior to the home that NVR advertised and that the Village approved in the permitting process. Doc. 46 at ¶¶ 38-40. The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th Cir. 2013) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). "To state a claim under the ICFA … [the Smiths] must plausibly allege: (1) a deceptive act or promise by [NVR]; (2) [NVR's] intent that [they] rely on the deceptive act; (3) the deceptive act occurred during a course of conduct involving trade or commerce; and (4) actual damage as a result of the deceptive act." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). T final element requires that the Smiths' actual damages be "proximately caused by [NVR's] deceptive act." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014).

The ICFA prohibits both "unfair" and "deceptive" acts or practices. 815 ILCS 505/2; *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (noting that actionable conduct may be deceptive, unfair, or both). While allegations of unfair acts under the ICFA need only satisfy the notice pleading standard of Rule 8(a), *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011), allegations of deceptive acts "sound[] in fraud" and are subject to Rule 9(b)'s heightened pleading standard, *see*

*Haywood*, 887 F.3d at 333. Because the Smiths allege only deceptive acts, Doc. 46 at ¶¶ 38 ("As detailed throughout [the] Amended Complaint, [NVR] deceived new home purchasers and the Village of Plainfield."), 39 ("[NVR's] acts and omissions created a likelihood of deception and had the capacity to deceive new home purchasers and the Village."), 40 (alleging that NVR "misrepresent[ed] the actual finished product" and intended "that new home purchasers would rely on the deception when purchasing a home[] and that the Village would rely on the deception when issuing a permit"), their ICFA claim must satisfy Rule 9(b). *See Haywood*, 887 F.3d at 333 (holding that an ICFA claim alleging unfair practices "still sounds in fraud [when] it relies upon the same baseline allegation that [the defendant] intentionally misled consumers"); *Pirelli*, 631 F.3d at 446 (holding that an ICFA claim alleging that the defendant "concealed" or "misrepresented" information is subject to Rule 9(b)).

Rule 9(b) provides that "[i]n alleging fraud … , a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Typically, "[t]hat means that [the complaint] must specifically allege the 'who, what, when, where, and how of the fraud.'" *Haywood*, 887 F.3d at 333 (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)). "A principal purpose of requiring that fraud be pleaded with particularity is, by establishing this rather slight obstacle to loose charges of fraud, to protect individuals and businesses from privileged libel (privileged because it is contained in a pleading)." *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir. 2003). That said, it is important to avoid "an overly rigid view of the [who, what, when, where, and how] formulation" and to recognize "that the precise details that must be included in a complaint 'may vary on the facts of a given case.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *Pirelli*, 631 F.3d at 442).

In seeking dismissal, NVR argues that the amended complaint's ICFA allegations are not sufficiently particular under Rule 9(b), that any misrepresentations to the Smiths about the shingles and cabinets amounted only to breach of contract, and that no misrepresentation to the Village about the HVAC system, joists, and water supply lines proximately caused any damages to the Smiths. Doc. 58 at 6-10. The court turns first to NVR's representations regarding the shingles and cabinets, Doc. 46 at ¶¶ 10-14, before considering its representations regarding the HVAC system, joists, and water supply lines, *id*. at ¶¶ 19-27.

As noted, before purchasing their home, the Smiths met at the Tall Pines sales center with NVR sales representatives Tammy Quinn and Renee, who gave them advertising materials describing various features, including shingles and cabinets, that their home would include. *Id.* at ¶¶ 9-12; Doc. 30-1 at 2 (reproducing the brochure). The Smiths relied on these representations in purchasing their home, as NVR intended, but later found the cabinets and shingles to be inferior to what the brochure described. Doc. 46 at ¶¶ 13-14, 40-41.

These allegations, which are more detailed than those in the original complaint, satisfy Rule 9(b) by setting forth when (before the home purchase in April 2016) and where (the Tall Pines sales center) the misrepresentations occurred, who (Tammy Quinn and Renee) and what (the advertising materials) was involved, and how (providing the Smiths with the advertising materials) the scheme was accomplished. *See Camasta*, 761 F.3d at 737 (holding that fraud allegations need not "provide the precise date, time, and location" of the advertisement "or every word that was included on it," but must include more than an "assertion that merchandise was offered at sales prices") (internal quotation marks omitted); *Pirelli*, 631 F.3d at 445 (holding that allegations of fraud "need to provide firsthand facts or data to make [their] suspicions plausible," but need not provide "comprehensive" data). That the Smiths do not provide even further

6

details—the exact date and time that they visited the sales center, Renee's last name, or more information about the oral representations they heard—does not preclude them from complying with Rule 9(b) given the details they were able to provide. *See Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 870 (7th Cir. 2013) (holding insufficient under Rule 9(b) allegations lacking "any precision" about the alleged misrepresentations); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999) (noting that an "approximate date" is sufficient under Rule 9(b)).

NVR argues that even if the Smiths' allegations regarding the shingles and cabinets satisfy Rule 9(b), they establish no more than breach of contract. Doc. 58 at 7-8. True enough, "[a] breach of contractual promise, without more, is not actionable under the [ICFA]." *Phila. Indem. Ins. Co.*, 771 F.3d at 402 (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005)); *see also Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (holding that the ICFA "is not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy") (internal quotation marks omitted). That said, allegations of breach *plus* "some stand-alone allegation of a fraudulent act or practice" can state an ICFA claim. *Greenberger*, 631 F.3d at 400; *see also Terrazzino v. Wal-Mart Stores, Inc.*, ___ F. Supp. 3d ___, 2018 WL 3921301, at *6 (N.D. Ill. Aug. 16, 2018) ("Although an ICFA claim must include more than simply breach-of-contract allegations, a promise to perform future conduct can give rise to a claim of fraud if the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud.") (internal quotation marks omitted). The alleged fraudulent conduct may be an affirmative misrepresentation or the omission or concealment of material facts. *See Galvan v. Nw. Mem. Hosp.*, 888 N.E.2d 529, 539 (Ill. App. 2008) (holding that, in addition to "fraudulent misrepresentation," "[a]n omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud");

7

*Pappas v. Pella Corp.*, 844 N.E.2d 995, 999, 1004 (Ill. App. 2006) (holding that "[c]oncealment [of a material fact] is actionable [under the ICFA] where it is employed as a device to mislead," even if the concealment occurs "by silence").

Here, NVR's misrepresentations concerning the cabinets and shingles go beyond breach of contract; according to the Smiths, NVR in advertising materials promised high-quality products to induce the sale but then, unbeknownst to them, installed substantially inferior versions. Doc. 46 at ¶¶ 13-14; Doc. 62 at 9-10. It is plausible that reasonable consumers would rely on NVR's pre-sale representations regarding the natural wood cabinets and 30-year shingles and then not realize that they had received 25-year shingles and veneer cabinets; accordingly, by installing inferior cabinets and shingles nearly identical in appearance to what it represented in its brochure but not disclosing any deviation, NVR could conceal the substitutions from the Smiths' untrained eyes. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (noting that the ICFA protects against "statement[s] … likely to mislead (either through a statement or material omission) a reasonable consumer"); *cf. Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 (7th Cir. 2001) (holding that no deception occurs when information available to consumers "would dispel any" misimpression caused by the defendant's statements). And by alleging that NVR intentionally misrepresented which shingles and cabinets would be installed *and then* concealed its breach by using shingles and cabinets whose similar appearance prevented discovery of the undisclosed substitution, the Smiths have stated a viable ICFA claim as to the shingles and cabinets. *See Greenberger*, 631 F.3d at 400 (noting that "allegations of systemic fraud and violation of" the ICFA become actionable when they "involve[] affirmative acts of misrepresentation and not a simple breach of contract multiplied over a prospective plaintiff class"); *Kirkpatrick v. Strosberg*, 894 N.E.2d 781, 795 (Ill. App. 2008) (upholding a

punitive damage award under the ICFA where a seller advertised that the ceiling height in new condominium units would be nine feet despite knowing that it would be several inches shorter); *Gehrett v. Chrysler Corp.*, 882 N.E.2d 1102, 1115 (Ill. App. 2008) (holding that the plaintiff stated a viable ICFA claim, and not just breach of contract, where the defendant allegedly concealed brand information "so as to deceive plaintiffs about the true" nature of what they were purchasing); *cf. Avery*, 835 N.E.2d at 857 (declining to find that an insurer engaged in deceptive conduct where "it disclosed the use of [the inferior replacement] part" to the insureds).

As to the HVAC system, joists, and water supply lines, NVR contends that the Smiths cannot show that its alleged misrepresentations proximately caused their damages. Doc. 58 at 9-10. Alleging proximate cause under the ICFA requires "the deceptive act [to be] the but-for cause of the damage." *Haywood*, 887 F.3d at 333 (internal quotation marks omitted). For reasons too obvious to state, but-for causation can exist only if the plaintiffs' purchase "occurred after the [defendant's] allegedly fraudulent statements." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996). "Although proximate cause in an [ICFA] claim is typically an issue of fact, a court may determine it as a matter of law where only one conclusion is evident." *Haywood*, 887 F.3d at 334 (internal quotation marks omitted).

By contrast to their allegations regarding the cabinets and shingles, the Smiths do not allege that NVR's advertising materials referenced the HVAC system, joists, or water supply lines. Doc. 46 at ¶ 12; Doc. 30-1. Rather, the Smiths allege that NVR made misrepresentations regarding those components to *the Village* during the permitting process and that they were *indirectly* deceived by those misrepresentations. Doc. 46 at ¶¶ 15-27, 40.

The ICFA recognizes "indirect deception" claims as long as the consumer "indirectly" receives "communication or advertising from the defendant." *De Bouse v. Bayer*, 922 N.E.2d

9

309, 316-17 (Ill. 2009); *see also Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 218 (Ill. 2004) ("[I]t is enough that the statement[] by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage.") (internal quotation marks omitted). The Smiths, however, do not allege that they became aware of NVR's misrepresentations to the Village regarding the HVAC system, joists, or water supply lines *before* they agreed to buy their home. Doc. 46 at ¶¶ 15-18 (alleging that the Village reviewed the building plans that NVR submitted during the permitting process without stating whether the plans reached the Smiths before their purchase). Accordingly, because the Smiths neither "[saw] nor heard" NVR's alleged misrepresentations to the Village before their purchase, "[they] cannot have relied on the statement[s] and, consequently, cannot prove proximate cause." *De Bouse*, 922 N.E.2d at 316; *see also Camasta*, 761 F.3d at 737-38 ("A sales receipt provided to a consumer after a purchase cannot show what was supposedly advertised; the representation must have been made to him *before* the purchase of the merchandise.").

It follows that the Smiths cannot pursue their ICFA claim to the extent it rests on NVR's alleged misrepresentations to the Village regarding the home's HVAC system, joists, and water supply lines. Because the Smiths have already been given one chance to replead their ICFA claim, the dismissal is with prejudice. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem … ."). Dismissal with prejudice also is warranted due to the Smiths' failure to request a chance to replead in the event of dismissal. *See Haywood*, 887 F.3d at 335 ("Nothing … in any of our cases[] suggests that a district court must give leave to amend a complaint where a party does not request it … . To the contrary, we have

held that courts are within their discretion to dismiss with prejudice where a party does not make such a request … .").

Finally, NVR moves to dismiss the Smiths' prayer for punitive damages. Doc. 58 at 12-13. The proper vehicle for this challenge is a Rule 12(f) motion to strike, not a Rule 12(b)(6) motion. *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 783-84 (7th Cir. 2013) (affirming "the district court's decision to strike the estate's request for punitive damages"). The motion to strike is denied because the ICFA permits punitive damage awards, *see Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006); *Crittenden v. Cook Cnty. Comm'n of Human Rights*, 990 N.E.2d 1161, 1168-69 (Ill. 2013), and the complaint's allegations regarding the cabinets and shingles, read in the light most favorable to the Smiths, suggest a calculated pattern of deception upon which a punitive damage award could rest. *See Parks v. Wells Fargo Home Mortg., Inc.*, 398 F.3d 937, 942 (7th Cir. 2005) (explaining that Illinois law allows punitive damages where a defendant "exhibit[s] a conscious and deliberate disregard" for consumers' rights that goes beyond "mere inadvertence, mistake, or errors of judgment") (internal quotation marks and alteration omitted); *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 757 (Ill. 1994) (noting in an ICFA case that punitive damages are available when "torts are committed with fraud") (quoting *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978)).

## II. Breach of Contract Claim

As noted, the Smiths' contract claim alleges that NVR breached the Purchase Agreement by installing home shingles, cabinets, joists, HVAC components, and water supply lines inferior to those required by the Agreement. Doc. 46 at ¶¶ 12-14, 18, 42-44; Doc. 58-1 at 5. In its previous opinion, the court declined to dismiss the contract claim as it pertained to the shingles and cabinets because it is plausible that the shingles and cabinets installed in the Smiths' home

11

were not "similar materials of substantially equivalent quality" to what NVR promised in the Agreement. 2018 WL 2718038, at *5 (internal quotation marks omitted). The court, however, dismissed the contract claim as it pertained to the HVAC system, floor joists, and water supply lines because the Smiths did not allege how, given the Village's issuance of the necessary permits, the HVAC system, floor joists, and water supply lines could have violated the building code or the Agreement. *Id*. at *4. The court concluded that, absent allegations that the Village's inspection was "deficient" or that the defects were "concealed" from or "otherwise not discovered" by the inspectors, the Smiths did not plausibly allege that NVR breached the Agreement as to the HVAC system, joists, and water supply lines. *Ibid*.

In the amended complaint, the Smiths allege that even though the HVAC system, joists, and water supply lines that NVR installed were substantially inferior to those it set forth in the plans submitted to the Village, the Village did not discover that inferiority during the inspection process due to the similarity in appearance between what the plans called for and what NVR installed. Doc. 46 at ¶¶ 18, 23, 25, 27. The question here is whether those allegations cure the flaw that resulted in dismissal of the original complaint's contract claim concerning the HVAC system, joists, and water supply lines.

Under Illinois law, a plaintiff claiming breach of contract must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) (quoting *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). "[I]f the language of the

contract is susceptible to more than one meaning, it is ambiguous. If the contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent." *Ibid*.

As noted, the Purchase Agreement provides that the home would be constructed as shown on the "Plans and Specifications," Doc. 58-1 at 2, but reserves for NVR "the right to substitute similar materials of substantially equivalent quality" and to make changes "for purposes of mechanical installations, building code and site requirements, and reasonable architectural design improvements," *id*. at 5. The plans that NVR submitted to the Village as part of the permitting process are among the "Plans and Specifications" referenced by the Agreement. Doc. 58-1 at 2 (defining "Plans and Specifications" to include "plans related to construction of the [h]ome"). Accordingly, for a breach to have occurred, the HVAC system, joists, and water supply lines that NVR installed in the Smiths' home must not be substantially equivalent in quality to the HVAC system, joists, and water supply lines in the plans submitted to the Village, and the substitution must not have been for a purpose allowed by the Agreement.

As a threshold matter, NVR argues that the contract claims do not satisfy Rule 8(a) because the Smiths do not specify the contractual provisions that NVR allegedly breached. Doc. 58 at 10-11; Doc. 63 at 10. This argument fails because the amended complaint repeatedly alleges that the HVAC system, water supply lines, and joists were not constructed with "similar" materials of "substantially equivalent quality" to the materials set forth in the plans NVR submitted to the Village, Doc. 46 at ¶¶ 18, 20, 22-24, 26, which mirrors the language used in the above-referenced clause of the Agreement, Doc. 58-1 at 5. By placing NVR on notice of how it allegedly breached the Purchase Agreement, the contract claim satisfies Rule 8(a). *See Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015) ("Specific facts are not necessary; the statement [in the complaint] need only give the defendant fair notice of what the claim is and the

13

grounds upon which it rests.") (internal quotation marks and alteration omitted); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 589 F. Supp. 2d 987, 991 (N.D. Ill. 2008) ("[The pleadings] may not have expressly named each of the pertinent contracts or pled every relevant detail, but [plaintiffs] are not required to do so under Rule 8. The allegations … are sufficient to give [the defendants] fair notice of the contract actions against them and enable them to conduct a meaningful investigation into such claims and possible defenses.") (footnote omitted).

The Smiths claim that NVR installed an HVAC system with inferior performance, Doc. 46 at ¶¶ 20, 22-23, water supply lines that are narrower, *id.* at ¶ 24, and framing joists with less support, *id.* at ¶ 26, than those called for by NVR's plans, *id.* at ¶¶ 18-24, 26. Unlike the original complaint, the amended complaint alleges how the home could have passed the Village's inspection despite significant deviations from the HVAC system, joists, and water supply lines approved during the permitting process: the deviations were not visually apparent to a building inspector determining overall compliance with the plans. *Id.* at ¶¶ 18, 23, 25, 27. It is entirely plausible that visually subtle but functionally significant deviations in HVAC performance, water supply capacity, and framing support would not be detected during a routine inspection encompassing a wide range of home features. *See Clark v. Runyon*, 116 F.3d 275, 279 n.5 (7th Cir. 1997) ("[I]t is plausible to think that [an official] might have performed his inspections without thinking about the accuracy of [a specific item in] the posted notices.").

Moreover, as explained in the court's prior opinion, 2018 WL 2718038, at *4, the Agreement does not define the terms "similar materials" and "substantially equivalent quality" or the "mechanical installations, building code and site requirements, and reasonable architectural design improvements" that could permit substitution. Doc. 58-1 at 5. Because what is "similar,"

"substantially equivalent," or "reasonable" in one context may not be in another, especially in connection with a complex project like home construction, those contractual terms are ambiguous. *See Amerisure Ins. Co. v. Roll Serv., Inc.*, 2002 WL 31101269, at *5 (N.D. Ill. Sept. 19, 2002) ("'Similar quality' is an ambiguous term because it is susceptible to more than one reasonable meaning.") (Illinois law); *see also Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 108 F. Supp. 3d 543, 558 (E.D. Mich. 2015) (declining to determine as a matter of law "whether synthetic lanes are of 'comparable material and quality' to wood" when the contract does not define "comparable") (Michigan law); *Nat'l Presbyterian Church, Inc. v. GuideOne Mut. Ins. Co.*, 82 F. Supp. 3d 55, 59 (D.D.C. 2015) (finding ambiguous the contractual phrase "other property of like kind and quality") (D.C. law); *Trout Brook S. Condo. Ass'n v. Harleysville Worcester Ins. Co.*, 995 F. Supp. 2d 1035, 1044 (D. Minn. 2014) (holding that "[t]he terms 'similar materials' and 'material of like kind and quality' simply cannot be defined, as a matter of law") (Minnesota law); *RSR Corp. v. Johnson Controls Battery Grp., Inc.*, 2014 WL 12531156, at *2 (N.D. Tex. Jan. 28, 2014) (holding the term "substantially similar" to be "ambiguous") (Wisconsin law); *Ace European Grp. v. Sappe*, 2012 WL 3638690, at *5 (D.N.J. Aug. 21, 2012) (concluding that the meaning of "reasonably" is ambiguous and "inherently involves a fact-based inquiry into what is reasonable under the particular circumstances involved") (New Jersey law); *French v. State Farm Fire & Cas. Co.*, 950 N.E.2d 303, 309 (Ind. App. 2011) (explaining that defining the "ambiguous" term "similar construction" requires a "fact-sensitive" analysis in which several factors are considered) (Indiana law).

Accordingly, the plausibility of the Smiths' allegations that the Village's inspection did not discover significant discrepancies between the plans and the home, together with the facial ambiguity of key contractual terms, allow the contract claims to survive dismissal. *See Newman*

15

*v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018) (holding that, given "facial ambiguity" in the disputed provision, the "contract claim survives [the defendant's] motion to dismiss" and "the parties may introduce extrinsic evidence to substantiate their reading of the contract") (Illinois law); *NanoeXa Corp. v. Univ. of Chi.*, 2011 WL 1399264, at *4 (N.D. Ill. Apr. 13, 2011) ("Because the agreement is ambiguous with respect to the scope of the rights granted to the [the plaintiff], the declaratory judgment claim survives dismissal under Rule 12(b)(6). Proper interpretation of the agreement will require extrinsic evidence, which the parties may adduce in discovery and present at summary judgment and, if the case survives, at trial.") (Illinois law) (citing cases). With extrinsic evidence of how "similar," "substantially equivalent," and "reasonable" should be defined, Doc. 58-1 at 5, along with evidence of which substitutions occurred, the court at summary judgment or a jury at trial will be better positioned to determine whether NVR breached the Purchase Agreement.

## Conclusion

NVR's motion to dismiss the amended complaint is granted in part and denied in part. The ICFA claim is dismissed with prejudice insofar as it concerns NVR's alleged representations regarding the HVAC system, joists, and water supply. The Smiths may proceed with the contract claim in its entirety and with the ICFA claim to the extent it alleges misrepresentations regarding the shingles and cabinets.

December 5, 2018

United States District Judge