UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL SMITH and DEBORAH SMITH, ) | |
| ) | |
| Plaintiffs, ) | 17 C 8328 |
| ) | |
| vs. ) | Judge Gary Feinerman |
| ) | |
| NVR, INC., ) | |
| ) | |
| Defendant. ) | |

### **M**EMORANDUM **O**PINION AND **O**RDER

On behalf of themselves and a putative class of fellow homebuyers in the Tall Pines development in Plainfield, Illinois, Paul and Deborah Smith allege that NVR, Inc. violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), and committed breach of contract by selling them a home with features different than NVR promised. Doc. 46. The court dismissed some of the Smiths' claims but allowed others—including their putative class claims that NVR violated the ICFA as to the home's cabinetry and shingles—to proceed. Docs. 44-45 (reported at 2018 WL 2718038 (N.D. Ill. June 6, 2018)); Docs. 73-74 (reported at 2018 WL 6335051 (N.D. Ill. Dec. 5, 2018)). The Smiths now move under Civil Rule 23 to certify a class of Tall Pines homebuyers on those ICFA claims. Doc. 84. The motion is denied.

### Background

"Unlike a motion under Federal Rule of Civil Procedure 12(b)(6), a motion to certify a class under Rule 23(c) is not one for which the court may simply assume the truth of the matters as asserted by the plaintiff[s]. Instead, if there are material factual disputes, the court must receive evidence and resolve the disputes before deciding whether to certify the class." *Priddy v.*

1

*Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) (citation, alterations, and internal quotation marks omitted). Still, "[i]n conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 376 (7th Cir. 2015) (internal quotation marks omitted).

This court's prior opinions describe the factual backdrop of this case, so only the pertinent details are set forth here. On April 28, 2016, the Smiths agreed to purchase from NVR a home in the Tall Pines development. Doc. 46 at ¶ 8; Doc. 58-1 at 2. NVR's sales representatives provided the Smiths with advertising and sales materials, including a brochure titled "Tall Pines at Grande Park Included Features." Doc. 46 at ¶¶ 10-11; Doc. 85-2. Paul Smith avers that the Included Features document was "one of the factors [the Smiths] considered when deciding to purchase [their] new home." Doc. 84-3 at ¶ 6. The document indicated that the home would have TAMKO 30-year shingles, TIMBERLAKE honey oak or maple kitchen cabinets, and TIMBERLAKE natural oak vanity cabinets in the bathroom. Doc. 46 at ¶ 12; Doc. 85-2 at 2. The Smiths received instead 25-year shingles and cabinets with an artificial non-wood wrap. Doc. 46 at ¶¶ 13-14.

Paul Smith further avers that he saw "that *some* of [his] neighbors have the same Included Features sale document," Doc. 84-3 at ¶ 7 (emphasis added); that said, he has personal knowledge only that seven other homes have or had the document, Doc. 105 at ¶ 5, and he does not say one way or the other whether any of his neighbors did not receive it. Four of the Smiths' neighbors aver that they received a copy of the Included Features document. Doc. 101 at p. 3, ¶ 6; Doc. 102 at p. 3, ¶ 7; Doc. 103 at p. 2, ¶ 7; Doc. 104 at ¶ 7. An NVR division manager avers that the document was discontinued "while [Tall Pines] homes were still being constructed and sold in the Subdivision." Doc. 92-1 at pp. 4-5, ¶ 18.

2

The Smiths and NVR agree that 22 of the 46 Tall Pines homes received 25-year shingles. Doc. 92 at 6; Doc. 99 at 6. An NVR sales representative avers that "as part of the sales process, [a] sales and marketing representative reviewed the features of the home with prospective purchasers, including the fact that (at the pertinent time) purchasers would receive a 25-year shingle." Doc. 92 at 13 (citing Doc. 92-3 at ¶¶ 17-18). The sales representative further avers that purchasers were again advised of the use of the 25-year shingle during the pre-construction meeting, when they reviewed the Selection Acknowledgment Report with an NVR representative. Doc. 92-3 at ¶ 19. Paul Smith counters that he and his wife were not told they would be receiving 25-year shingles. Doc. 84-3 at ¶ 10. The four aforementioned affiants likewise aver that their NVR sales representative "did not advise or point out … that a 25-year shingle would be used at [their] home[s] as opposed to the 30-year shingle promised in the 'Included Features' sales sheet." Doc. 101 at p. 3, ¶ 9; Doc. 102 at p. 3, ¶ 10; Doc. 103 at p. 2, ¶ 10; Doc. 104 at ¶ 10. Neither those affiants nor the Smiths describe what the other Tall Pines homeowners who received 25-year shingles were told by their NVR sales representative. An NVR division manager avers that NVR's practice was to review with purchasers the use of 25-year shingles. Doc. 92-1 at p. 4, ¶¶ 13-14. Indeed, the Smiths' own Pre-Construction Selection Acknowledgment Report, which they reviewed in advance of construction, had a "handwritten checkmark by the notation 'roof shingles 25 year,'" which the division manager avers "reflect[s] that the shingle was discussed by a … representative with the Smiths at the Preconstruction Meeting held on July 8, 2016." *Id.* at pp. 3-4, ¶¶ 9, 16-17; *see also id.* at p. 16.

The Smiths discussed cabinetry options with NVR sales representatives prior to purchasing their home and decided to upgrade their cabinets to "Sonoma Maple Espresso." Doc. 84-1 at 3; Doc. 84-3 at ¶¶ 8-9. The Smiths saw a sample Sonoma Maple Espresso cabinet door

3

at the model home at the time they signed their contract with NVR, Doc. 92 at 15; Doc. 92-4 at 20 (71:20-24), but the parties dispute whether the sample was labeled with specifications about its composition, Doc. 92 at 15-16; Doc. 99 at 3. NVR's sales representative and division manager aver that the cabinet door samples at the model home and the design center had labels with information about the cabinets, including whether they utilized veneer or medium density fiberboard. Doc. 92-3 at ¶¶ 9-11; Doc. 92-1 at ¶¶ 38-40; Doc. 92-2 at ¶ 7. The Smiths and their four affiants looked at the cabinet doors at the "sales center," which they aver were not labeled with composition information. Doc. 84-3 at ¶ 19; Doc. 101 at p. 2, ¶ 5; Doc. 102 at p. 2, ¶ 5; Doc. 103 at p. 2, at ¶ 5; Doc. 104 at ¶ 5. NVR's sales representative and division manager also aver that Specification Sheets providing information about the cabinet options were available at the model home, Doc. 92-3 at ¶ 13; Doc. 92-1 at pp. 8-9, ¶¶ 41-42; Doc. 92-2 at ¶ 7, but the Smiths did not see those sheets, Doc. 84-3 at ¶ 20, and three affiants report that they were not provided with them, Doc. 102 at p. 3, ¶ 6; Doc. 103 at p. 2, ¶ 6; Doc. 104 at ¶ 6.

The cabinets the Smiths received are not made of solid wood; rather, the cabinet boxes are particle board, the drawer boxes are fiberboard, and the shelves are particle board. Doc. 84-1 at 3; Doc. 84-3 at ¶ 9. No putative class member received solid wood cabinets. Doc. 84-1 at 3-4. Paul Smith avers that the Smiths "would not have upgraded [their] cabinets and paid the additional cost for upgraded cabinets if [they] had known" that they would not be solid wood. Doc. 84-3 at ¶ 8. He acknowledges, however, that in selecting cabinets, he "had a choice of different architectural styles, some of which appealed to some purchasers and others which appealed to others." Doc. 92-4 at 20 (70:3-6). NVR's division manager avers that half of the homebuyers chose to have painted cabinets, which use non-wood material "in order to achieve a superior uniform finish." Doc. 92-1 at p. 13, ¶ 60.

4

The Smiths allege that NVR violated the ICFA as to the cabinets and shingles. They seek to certify under Rule 23(b)(1) or (b)(3) an ICFA class of the "new home purchasers in Tall Pines," reasoning that "they all purchased new homes from [NVR] and none of them received the wood cabinets [NVR] represented it would include as a standard feature, and without an upgrade[, and] … thirty-five of those 74 class members did not receive the 30-year shingles Defendant promised … ." Doc. 99 at 1.

**Discussion**

A court's analysis of class certification "is not free-form, but rather has been carefully scripted by the Federal Rules of Civil Procedure." *Chi. Teachers Union, Local No. 1. v. Bd. of Educ. of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015). To be certified, a proposed class must satisfy the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see Bell*, 800 F.3d at 373. If Rule 23(a) is satisfied, the proposed class must fall within one of the three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011); *see also Bell*, 800 F.3d at 373. Finally, the class must be "identifiable as a class," meaning that the "class definitions must be definite enough that the

5

class can be ascertained." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *see also Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659-61 (7th Cir. 2015).

The Smiths bear the burden of showing by a preponderance of the evidence that each class certification requirement is satisfied. *See Priddy*, 870 F.3d at 660; *Chi. Teachers Union*, 797 F.3d at 433; *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012). As the Seventh Circuit has explained, "a district court must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010); *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889-90 & n.6 (7th Cir. 2011). The Seventh Circuit has instructed district courts to exercise "caution" before certifying a class. *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

As noted, the Smiths seek to certify under Rule 23(b)(1) or (b)(3) an ICFA class of "all persons who purchased homes from [NVR] in the Tall Pines neighborhood." Doc. 46 at ¶ 28; Doc. 84-1 at 1. NVR contends that Rule 23(b)(1) certification is inappropriate because the putative class seeks damages and there is no limited fund that must be distributed ratably. Doc. 92 at 32-33. The Smiths do not respond to this argument, thereby forfeiting the point. *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 593 (7th Cir. 2011) (holding that the plaintiff "forfeited" an argument in support of class certification "by waiting until his motion to reconsider the certification denial to argue it"); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 n.4 (7th Cir. 2003) (holding that the plaintiff forfeited an argument in support of class certification by "fail[ing] to present [it] to the district court"); *see generally Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017) ("Failure to respond to an argument generally

6

results in waiver … ."). In any event, NVR is correct that Rule 23(b)(1) certification is inappropriate where, as here, the case is a damages actions that does not involve a limited fund. *See Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) ("Rule 23 itself limits no-opt-out classes to the situations described in Rule 23(b)(1) and (2), which [the plaintiffs] do[] not meet: all private actions [they pursue] are for damages."); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999) ("[I]n actions for money damages class members are entitled to personal notice and an opportunity to opt out[, which occurs only under Rule 23(b)(3)].").

As to certification under Rule 23(b)(3), NVR contends that the proposed class fails to satisfy the predominance requirement. Doc. 92 at 27-30. A proposed class satisfies the predominance requirement if "the questions of law or fact common to class members predominate over any questions affecting only individual members … ." Fed. R. Civ. P. 23(b)(3). While similar to commonality, predominance is "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). Predominance is not satisfied where liability determinations are individual and fact-intensive, *see Kartman*, 634 F.3d at 891, and "[m]ere assertion by class counsel that common issues predominate is not enough," *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (emphasis omitted). Predominance fails where "affirmative defenses will require a person-by-person evaluation of conduct to determine whether [a defense] precludes individual recovery." *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd*, 256 F. App'x 818 (7th Cir. 2007); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("[W]hile it is well established that the existence of a defense potentially implicating different class members differently does not necessarily defeat class certification, it is equally well established that courts must consider potential defenses in

7

assessing the predominance requirement.") (emphasis and citations omitted). And while "not every issue must be amenable to common resolution" for Rule 23(b)(3) to be satisfied, "the district court must consider [the common issues'] relative importance." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018).

"Analysis of predominance under Rule 23(b)(3) 'begins … with the elements of the underlying cause of action.'" *Messner*, 669 F.3d at 815 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). To prevail on their ICFA claims, the Smiths must show that they were deceived by NVR's misrepresentations regarding the cabinets and shingles and that the misrepresentations proximately caused their damages. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (holding that the elements of an ICFA claim are: "(1) a deceptive act or promise by [the defendant]; (2) [the defendant's] intent that [the plaintiffs] rely on the deceptive act; (3) the deceptive act occurred during a course of conduct involving trade or commerce; and (4) actual damage as a result of the deceptive act"); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) ("[T]o prevail under ICFA, a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury."). As the Seventh Circuit has cautioned, although fraud claims "do not automatically fail the predominance test," they are often a poor fit for class certification "because they can involve so many individualized issues." *Beaton*, 907 F.3d at 1029.

The Smiths submit that the predominance requirement is satisfied because they "would not have upgraded the cabinets or paid the price they did for the new home" but for NVR's misrepresentations, and because "there is ample evidence in the record that [NVR] intended for all new home purchasers to rely on the Included Features sales sheet and that new home purchasers in Tall Pines were deceived by the Included Features sales sheet to their detriment."

8

Doc. 99 at 13-14. NVR disagrees, maintaining that "[t]here is no evidence of any class-wide misleading or deceptive conduct," particularly because even Paul Smith avers only that "some" of his neighbors received the Included Features document and because NVR discussed construction with each purchaser separately. Doc. 92 at 8, 28 (emphasis omitted).

The Smiths have not met their burden of showing by a preponderance of the evidence that questions common to the class predominate over individual questions. To begin, the Smiths fail to show that nearly all or even the majority of the putative class: (1) saw the Included Features document; (2) were not told by NVR or its sales representatives about the composition of their cabinets or which shingles they would receive; or (3) did not see in the NVR showroom the labels or Specification Sheets identifying the composition of the cabinets. Doc. 92-1 at pp. 4-5, 8-9, at ¶¶ 18, 38-42; Doc. 92-2 at ¶ 7; Doc. 92-3 at ¶¶ 11, 13, 16-19; Doc. 101 at pp. 2-3, ¶¶ 5-6, 9; Doc. 102 at pp. 2-3, ¶¶ 5-7, 10; Doc. 103 at p. 2, ¶¶ 5-7, 10; Doc. 104 at ¶¶ 5-7, 10. Given that the Smiths have not shown that nearly all or even the majority of the putative class received anything close to uniform representations from NVR regarding the cabinets and shingles, they cannot demonstrate predominance on their ICFA claims. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (recognizing that differences in the representations made to members of the putative class would defeat commonality, which necessarily would defeat predominance); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2007 WL 4287511, at *9 (N.D. Ill. Dec. 4, 2007) (holding that individual issues predominated because "each plaintiff will have been exposed to a different representation or mix of representations").

Even if the Smiths could show that nearly all or even the majority of the putative class members received similar misrepresentations regarding cabinet composition and shingle type, there remains the question of proximate cause. The Smiths contend that "they would not have

9

upgraded the cabinets or paid the price they did for the new home" but for NVR's deception. Doc. 99 at 14. But none of their four affiant neighbors aver as much. And while the Smiths contend that "a reasonable person purchasing a new home would not … pay extra for upgraded cabinets" if she were told that they "would be constructed of artificial non-wood materials," Doc. 99 at 9-10, that prediction is questionable at best. Half of the Tall Pines purchasers selected painted cabinets, which use non-wood materials, Doc. 92-1 at p. 13, ¶ 60, and as Paul Smith testified, "some purchasers" prefer one architectural cabinet style while "others" prefer other styles, Doc. 92-4 at 20 (70:3-6). Given this, it is entirely speculative for the Smiths to submit that a purchaser would decline to pay extra for her preferred architectural style in her preferred finish if her cabinets were composed of something other than solid wood. On this record, then, the Smiths have failed to show by a preponderance of the evidence that proximate cause could be proved on a classwide basis. *See Thorogood*, 547 F.3d at 746-48 (holding that common issues did not predominate where each class member's recovery turned on the extent to which she was damaged by the defendant's allegedly deceptive advertising); *Oshana*, 472 F.3d at 514 (affirming the denial of class certification of an ICFA claim where the proposed class included many members who could not prove that they suffered damages proximately caused by the defendant's alleged deception); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2007 WL 4287511, at *5 (denying class certification of an ICFA claim where "[t]he instant putative class would include people who (1) bought Craftsman tools but never saw any Craftsman advertising; (2) bought Craftsman tools but never saw advertising representing that the tools were made in the United States; and (3) bought Craftsman tools with the knowledge that those tools were not made in the United States").

In sum, the Smiths have not shown that the principal elements of their ICFA claims—whether the putative class members received misrepresentations and, of so, whether they suffered damages proximately caused by those misrepresentations—are susceptible to class resolution. It follows that the Smiths have failed to show the predominance necessary for certification under Rule 23(b)(3). *See Clark*, 256 F. App'x at 823 ("Because the ICFA requires individualized proof of proximate cause, the district court did not abuse its discretion in finding that class issues did not predominate … ."); *Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 462 (N.D. Ill. 2013) ("The proposed class includes individuals who: (1) were unaware of the presence of hexavalent chromium in Dexatrim and who would not have purchased the product had they been so aware; (2) were unaware of the presence of hexavalent chromium but may have still purchased the product had they been so aware; and (3) were aware of the presence of hexavalent chromium and purchased the product anyway. These differences among the proposed class require that the key liability issues—whether a given class member was deceived by [the defendant's] labeling of Dexatrim and whether she suffered damages as a result—can be resolved only on an individual basis.").

## Conclusion

The Smiths' class certification motion is denied. This case will proceed on the Smiths' individual ICFA and contract claims.

December 16, 2019

_____
United States District Judge